THEODORE L. BLOSSER and D. MARIE BLOSSER, Appellants, v. RAY C. WILCOX, ARIZONA COTTONSEED PRODUCTS COMPANY and NEVADA GINNING COMPANY, Respondents.

No. 6188

April 9, 1971                                        483 P.2d 659

*Albright, George, Johnson, Steffen & Simmons,* of Las Vegas, for Appellants.

*Foley Brothers,* of Las Vegas, for Respondent Arizona Cottonseed Products Company.

*Morton Galane,* of Las Vegas, for Respondent Ray C. Wilcox.

## OPINION

By the Court, ZENOFF, C. J.:

This is the second appeal in a lawsuit that became extensive and further complicated since our first opinion in Blosser v. Wilcox, 83 Nev. 124, 424 P.2d 886 (1967). At issue is a contract for the sale of real property, a cotton farm located in Clark County, which contract Theodore and D. Marie Blosser seek to enforce as sellers by this action for specific performance.

Blosser and Wilcox are the owners of adjoining parcels of 248 and 440 acres respectively. The parties agreed to a contract of sale under which they were to be bound by the results of appraisal of an agreed-upon appraiser. The contract provided for the sale of the Blosser ranch to Wilcox and the latter's efforts to sell the two as one operating unit. If a satisfactory sale could not be made within two years, Wilcox was to purchase Blosser's ranch outright for its fair market value as determined by the appraiser.

An appraisal was submitted by the appraiser, Thomas E. Taney, but Taney later submitted a revised appraisal which valued the Blosser property at $20,000 less than the first appraisal. Blosser insisted that the second appraisal was tainted by Wilcox and his California attorney wrongfully impressing

their will upon Taney and that therefore the first appraisal should stand. The reason for the revised appraisal was that Taney had appraised the residence dwelling on the farm at its reconstruction cost and the farm machinery at its auction value which Wilcox asserts is not proper under the contract. The Blossers appeal from the trial court's approval of the second appraisal as reported by a master in the master's report.

This appeal presents the question of whether the first or second of two appraisals submitted under a contract of sale was the proper one.[1] An appointed master, as well as the lower court, held that the second appraisal was properly submitted and should be adopted. We agree.

The appraiser, Thomas E. Taney, testified to the effect that his first appraisal was not intended to be a true appraisal. Instead, it was his attempt to compromise a difficult economic condition existing between the parties which was brought about by their involvement in the cotton industry and which was peculiar to the area wherein their farms are located. When that attempt failed, evidenced by Wilcox's objection to the formula used for the appraisal, Taney appraised in accordance with principles acceptable in the appraisal of farms.

The revised figure was lower than the original because the residence and equipment were included as part of the farm package, whereas, the first figure was based on separate appraisals on an "auction" basis. The residence and machinery had considerably less value when considered as part of an operating farm than if they were sold or valued separately.

Wilcox's disagreement with Taney's first appraisal was on valid grounds. Although voiced to Taney without Blosser's presence, Wilcox was doing only what could be expected, that is, insisting that Taney follow proper appraisal practices in appraising the farm as an entity as required by the contract.

Despite appellants' efforts to attribute bad faith to Taney and thus avoid a second appraisal we find no corruption. It is noted,

---

[1]The relevant parts of the contract are as follows:

"Both Wilcox and Blosser properties described in Exhibit A shall be appraised by an independent appraiser to determine their fair market value as separate and distinct *farms* and also their joint value as a single farm. . . . The appraisal shall include the fair market value of the improvements and the farming machinery and related equipment to be transferred by Blosser to Wilcox, a list of such machinery and equipment being set forth in Exhibit B, which said exhibit is attached hereto and by this reference incorporated herein as if fully set forth." (Emphasis added.)

too, that Blosser tried to exercise his personal will on Taney in private conversations with him on several occasions. Nevertheless, bad faith cannot be charged to anyone in this difficult transaction. We will not disturb the lower court's findings. NRCP 52(a). Overall, it had developed that the first figure was founded upon improper and unrecognized methods of appraising. Undoubtedly, an order would have issued to do the appraisal over. This in effect is what resulted anyway.

In one respect we might have disagreed with the trial court. Blosser sued to recover on the first and higher appraisal. Wilcox chose to deem that action a breach on Blosser's part and obtained rescission. Blosser should have the opportunity to accept or reject the second appraisal. If he rejects that appraisal after the rendition of this opinion, then the deal must fail.

Affirmed, but remanded to the trial court for further proceedings as stated.

MOWBRAY and THOMPSON, JJ., concur.

BATJER, J., concurring in the result:

I concur in the result but respectfully disagree with the majority's reasoning in reaching that result. When this court, without the knowledge that Thomas E. Taney would repudiate his initial appraisal, decided the first *Blosser* case, Blosser v. Wilcox, 83 Nev. 124, 424 P.2d 886 (1967), it delivered a mandate to the trial court when it said: "The difficulty in the instant matter does not arise because of any uncertainty in the written agreement. Rather, it came about because the appraiser made an original appraisal and later revised it. The seller found the first appraisal acceptable; the buyer preferred the revised version. *On remand, the lower court will have to decide which of the two figures should govern the parties,* and then fashion appropriate relief within the framework of the pleadings and the evidence. (Emphasis added.)

When Taney disavowed his first appraisal and denominated it as an attempt to effect a compromise between the parties, the special master should have terminated the hearing and entered a finding that the second figure must govern.

There was no need for the special master to further consider the vacillating double talk of Taney, because anything Taney had to say about his method in arriving at either figure was irrelevant after it was established that the first "appraisal" was only an effort at compromise and that there remained only one appraisal. The question of good faith was not properly before

either the special master or the trial court after it was established that there was only one appraisal and one figure.

Neither the special master, the trial court, nor this court need be concerned with how Taney arrived at the final figure.

For the majority to state that "[T]aney appraised in accordance with principles acceptable in the appraisal of farms," and that "Wilcox was doing only what could be expected, that is, insisting that Taney follow proper appraisal practices in appraising the farm as an entity as required by the contract" are recitations of dicta not really pertinent to the opinion.

Furthermore, this court in saying: "The revised figure was lower than the original because the residence and equipment were included as part of the farm package, whereas, the first figure was based on separate appraisals on an 'auction' basis. The residence and machinery had considerably less value when considered as part of an operating farm than if they were sold or valued separately," is adopting by way of dicta as the settled law of this state the vacillating double talk of Taney when it has nothing whatsoever to do with the deciding of the actual outcome of this case.

To substantiate that Taney appraised in accordance with principles acceptable in the appraisal of farms it was necessary to refer to McMichael's Appraising Manual, 4th Edition, p. 355, which reads as follows: "It may have buildings reasonably worth, on a reproduction basis, $15,000 or $20,000, but they may not add that in value to the completed farm project as a going concern. The appraiser must distinguish carefully the actual worth of improvements, *especially when the appraisal is for loaning purposes.*" (Emphasis added.) Taney testified: "The first indication I got that it [his first appraisal] was seriously erroneous was when I contacted the Utah Mortgage Company and attempted to get a loan on the Hafen property." Here we are dealing with a sale not a loan, and the question of whether the same methods of appraisal for agriculture lands may be used for farm loans as well as for sales is not before this court.

Without lending the stamp of approval to the "methods" of Taney, I would simply remand to afford Blosser an opportunity to accept or reject the second appraisal.

GUNDERSON, J., concurring:

I concur: in the result reached by the majority; in many of the sentiments expressed by Mr. Justice Batjer.

The first appeal of this cause was presented and decided on the assumption that the "appraiser" agreed upon by the parties

had appraised the Blossers' property, then rendered a revised appraisal. We remanded the cause for the lower court "to decide which of the two figures should govern." Blosser v. Wilcox, 83 Nev. 124, 126, 424 P.2d 886, 888 (1967).

From the record before us, it now appears that instead of two plausible appraisals to choose from, there is really none. The "appraiser" now stigmatizes his first evaluation of the Blossers' property as being "wrong to begin with," a mere attempt "to effect a settlement, a compromise," and not a proper "appraisal"; thus, to accept it as the latter rather than the former, one would have to credit his capacity to make an appraisal, but discredit his veracity in saying when he has made one. The "appraiser" now styles his second evaluation of the Blossers' property as the only real appraisal made by him; yet, for reasons suggested by Mr. Justice Batjer, I would not consider it a proper appraisal of the Blossers' property, for the purposes of these parties.

However, since I find no justification for the proposition that the Blossers rescinded the contract by attempting to enforce their rights under it, since the respondent insists that the second evaluation is the true "appraisal," and since the Blossers' rights will be completely frustrated if no opportunity is afforded to them to acquiesce in this view, I agree with the majority that, upon remand, the Blossers should be afforded the opportunity to accept or reject the only available "appraisal." If they reject it, the contract of the parties must fail because the "appraiser" agreed to by them has not fulfilled his function, and we cannot perform it for him.